Frank McCabe for Appellant Hatcher. I expect to be less than 15 minutes, but I would like to reserve two minutes for rebuttal if necessary. I'd like to talk briefly about the two major issues in the briefs. First, that appellant should be allowed to withdraw his guilty plea. And second, if the court disagrees, that at minimum the matter should be remanded for resentencing. As to the withdrawal of the guilty plea, I would suggest that there were fair and just reasons for withdrawal of the plea. The plea colloquy was not complete. The court did not tell appellant the elements of the offense. Well, the offense is, what, possession? The offense was possession or burial of narcotics. What more would he have had to tell him? I mean, that's a pretty simple crime. It's possession. Well, it is. It is. But I think the plea was pretty thin. I think it should have been more specific. And I think that if we look at what the appellant said at the time of the plea and what was put in the plea agreement, he was, he continually referred to 445 grams of heroin. And when he brought that up during the plea, he's obviously a knowledgeable person. He even knew the section he was pleading guilty to. He was either knowledgeable or had been adequately prepared by counsel. But if you're going to, at least it was my feeling as a district judge, and you correct me if I'm wrong, if I was going to indicate to him what they're charged with to make sure they know what they're charged to, I read the indictment. That's what the district judge did here. What's wrong with that, that if you're going to tell a person what they're charged with to read the charge, it seems to me to be kind of a logical approach. But you disagree. Why is that? Well, I think that I want to combine that part of it with also what has been referred to as the apprendee issue. And I don't think it exactly was an apprendee issue. But in the intervening period of time, the Supreme Court ruled in apprendee that all elements of the offense must be proven beyond a reasonable doubt. And I think that here affects the situation where this Circuit has said that there are cases in which the appellant must be able to basically balance his equities in deciding whether to enter a guilty plea. Let me give you, let's assume for sake of argument that reading the charge is sufficient, and if he'd gone ahead at that time and served his time, he wouldn't have an opportunity to overturn it for that reason. Just assume that. But in the intervening, what, 13 years when he was absconded and off in the South, the law changes. Why couldn't we say that he's waived that because he didn't stay and wait? He went on his way illegally to move. Why should he get the benefit of those 13 years and what happened? I don't think any case has said that there would be waiver under a circumstance like that. I understand what the Court is saying. And I think in some respects, he perhaps, if the Court agrees with my what I call apprendee claim,  he does get a benefit. He gets the burden in that, or he gets no benefit. He's prejudiced in that things happen during this time that has affected substantially his sentence, some of which is his fault, some of which isn't. I guess what I'd like to talk about for a minute is the Court's reliance in part, maybe in great part, on the fact that the government was prejudiced by the fact of this 13 to 16-year delay. And the district court calls that substantial in one situation and writes that it was a significant hardship. The problem that I have with that is that there's no evidence of any specific prejudice to the government because of this lengthy delay, as there would be in many cases. But when the burden is on a defendant appellant to raise prejudice, this Court and all courts have said you can't simply say, well, mines are dimmer now than they were, but really that's all that the government says. They wrote in their brief, events at issue are substantially dated and witnesses' memories are that much older. But the point is, I think, and the Court didn't really take into consideration, is that this was a wiretap case. And the telephone calls that were recorded on the wiretap were still there. And that was a major part of the government's case here. We also have a situation where many of the defendants have already served their sentences. They would not have Fifth Amendment refusal to testify. And they would presumably be available. So the government's case, unlike most cases, has not really changed over the years. And I think that is a factor that the Court should have taken into consideration in ruling on that. So your view is that they should have been required to call at least their principal witnesses and have them say, my memory has faded. I'm sorry, I can't remember it. Or that the wiretap evidence has been misplaced or disappeared or whatever. You want some evidence of the prejudice over the years rather than presumption. I think that's correct. There's no evidence whatsoever that the wiretap recordings are lost. The government made no showing whatsoever that any agent that participated in the wiretap has died or is no longer available. I mean, they just said over the past years, memories have dimmed. Now, that's the cases where the appellant has tried to say he's prejudiced by that. The courts have said that's not enough. And I would suggest here that that's not enough for the government either. What's good for the goose is good for the gander. They made no showing at all, other than the fact that this was 13 to 16 years ago, that they were prejudiced. The wiretap was still there, as far as anyone knows. In fact, at the time that appellant pled, there was a Franks hearing taking place with regard to the wiretap, which had not concluded. It ended because appellant pled guilty. In my remaining time, I'd like to talk about the second issue. If the Court disagrees that Appellant Hatcher should be allowed to withdraw his plea, the matter should be remanded for resentencing. The Court made the 20-year sentence that imposed fully consecutive to the 200-month sentence that was imposed in the Alabama case. The only ground that the Court gave was that there's no relationship between the two charges. And I have two problems. First, that's only one of the many factors that are listed in the sentencing guidelines to be considered in 5G 1.3. And second, I would suggest that looking at it from a sentencing standpoint, the two cases were not entirely separate, in that as a result of the Alabama case, the defendant's criminal history category was increased. In 93, he had no felony convictions. He had only three misdemeanors on his record. But his criminal history category was increased in the cases before us today. Plus, two points were added for obstruction of justice. And he lost the two points that the government was prepared to recognize he was entitled to in the plea agreement back in the 90s. So the Alabama case did affect his sentence in this case. It might have had an effect, but, I mean, these are independent events, right? I mean, if you're right, he can commit a whole bunch of crimes while he's on the lam and they'll all run concurrently. No, I'm not suggesting that it should have been run concurrently at all. In fact, his defense counsel suggested that she didn't use the words partially concurrent or partially consecutive. She suggested an additional 60 months. So I'm not suggesting that his sentence should have been totally concurrent. I don't think that's realistic. I would never argue that. But I'm saying that the Court should have considered, and I'm not sure he did consider, a partially consecutive sentence, which is allowed under the law, under Ninth Circuit cases. What's the story on the two-level bump he got for his role? Well, I'm not sure that that's justified, that there's any evidence or sufficient evidence to justify that. In fact, the government, early on in the case, at a bail hearing, talked about the three people from Southern California, Appellant and his two colleagues, as equals. And then as the case progressed, he became the leader of these two other people. He was there at the time that the 445 grams of heroin, the case went down, the co-defendant was arrested in the vehicle, and then Appellant was arrested at a hotel. I don't think there's sufficient evidence to show that they were anything other than three colleagues that were working together and that he was not the supervisor of the other two. What did they have? They had some wiretap evidence where he's supposedly telling them to do something? What did they have? I think that's about all I have, as I recall. To be honest, I don't know of anything else. Finally... Well, there is something in the wiretap about direction being given them to be sold, and he did tell one of them that, tell them nothing, that he'll take charge, and referring to one of them as my boy, I don't think there was enough. I don't think there was enough. I think, as you say, there was wording, statements he made in the wiretap could be interpreted as that he was a leader, but... Let me go back for just a second, if you wouldn't mind, to the consecutive question  Is your charge there a procedural charge or is it a substantive charge? I'm sorry, I'm not... I don't quite understand. Is it the problem that the district judge didn't follow the correct guidelines or is it the nature of the large amount of the sentence as a violation? I think it's really both. I think it's more procedural that he didn't articulate that he was considering a partially consecutive sentence. He was going off on the process that they're exactly the same, where, in fact, one of them gets boosted now under the new guidelines because of the prior act, and that's your argument is that he should have considered that for a partial consolidation. I think there are a number of things he should have considered. As I discussed before, I think that he should have considered that the cases sentencing-wise were not totally unrelated, that he was being punished. His sentence in this case was being increased by the other case. I think the other thing that he really did not take into account, although there was some discussion at the sentencing hearing, is the disparity, the unwarranted disparity in sentencing. As the Court's aware, this was a 92-count indictment. It took 50 pages. There were 17 defendants. This was the so-called Timothy Blewett criminal organization in Oakland. Of all the defendants, only the leader, Timothy Blewett, got a higher sentence than Appellant Hatcher. How many others had absconded for 13 years? I don't think anybody. To be honest. That sets him apart dramatically, doesn't it? Well, it does, but does it set him apart 10 years? Well, I mean, he gets a guideline sentence. He wasn't sentenced outside the guidelines. He wasn't sentenced outside the guidelines, but he was given the maximum sentence that could be given under the part of the statute that he pled to. He could not, legally, he could not have been given a longer sentence than 20 years. Well, I mean, I'm sure you see it the way Judge Shulman suggests, that once you abscond, you're in a very different position from people who are on trial. That is true. But I guess the question is how different a position should it be. If you abscond, should you get, he was looking at the possibility of a sentence of slightly over five years. Sixty-three months was the low end of the applicable guidelines when he pled. And he testified at the evidentiary hearing he thought that's what he'd get. He may not have. But even if he got double that, he was looking at 10 years less than what he got. So all I'm saying is because he absconded, he should not have wound up with the maximum sentence given the fact that the Court did not consider the partially consecutive option and the Court really did not consider the disparity. Even given his absconding, there's a substantial, what I would suggest unwarranted disparity in the sentences. Thank you, Mr. McKee. Good morning. Good morning, Your Honor. May it please the Court. Erica Frick on behalf of the United States. I'd like to address a couple of main points raised by the defendant today. First of all, in terms of the conviction itself, I want to emphasize that this is not an Apprendi case. Apprendi applies only where an enhanced statutory maximum penalty is triggered. And here, because Hatcher pled to and was sentenced under the statute for an unspecified amount of drugs, there was no enhanced penalty. Therefore, the requirements of Apprendi simply didn't apply here, and there was no requirement to inform him that drug quantity must be proved beyond a reasonable doubt. There was some confusion, though. It's pretty obvious the defendant, at least as I read the record, he seemed to be pretty alert to what was going on and what the statute was.  He's not a dummy. And he talked about how much it was. And then the judge read to him, no, the charge didn't have a certain amount. And, of course, that, I suppose, takes care of the argument. But it is somewhat bothersome that he thought that it had a certain number of drugs that were involved rather than an unstated amount. And I suppose he was thinking of what would actually happen where the government didn't state the amount of drugs that were involved. Doesn't that show there wasn't a real meeting of the minds here? No, Your Honor. I actually disagree with that interpretation. Basically, he did admit the 445 grams of heroin, but he certainly wasn't required to. That was expressly stated several times in the plea colloquy, including an extensive explanation by his counsel, saying exactly what was happening, which is that he was admitting the 445 grams, but the rest of the drugs would be disputed at sentencing. I think the fairest interpretation of this, based on the record, is that he had absolutely no argument for saying he wasn't responsible for those 445 grams. He had admitted it at the time of the arrest. In fact, he instructed the officers of where to find the 445 grams in the car. So given that the evidence was overwhelming and uncontroverted against him on that piece, he had simply decided to throw in the towel on the 445 grams. I think that's actually the fairest interpretation of the record. If anything, there was an error in his favor, wouldn't it? I'm sorry. If anything, there was an error in his favor because all he had to admit was a trace amount. He didn't have to admit any other quantity beyond that. I'm not sure I understand. Do you mean, Your Honor, that if it's an error in his favor in the sense that he got the 20-year maximum and it could have been higher? What I'm saying is all he had to do is admit that he possessed some quantity. He didn't have to admit the larger quantity, and so anything he says about that is or even questioning about it was really irrelevant and didn't harm him in any way. He got the benefit of just the trace amount that all he had to admit. Yes, Your Honor. He did get the benefit because ultimately he was sentenced to 240 months, and his guideline range would have actually been significantly higher if he had been sentenced under the higher ranges. He could have said he had 10 tons, but all of that was of no moment because he just was sentenced as if he had a trace amount, is what I'm getting at. Yes, yes. What about at the time before the guideline change and the rest of this, 13 years earlier? What was the benefit or the detriment to him that he was sentenced for an unknown charged with an unknown amount as distinguished from the actual amount? What would be the difference in sentencing then if at the very time before he skipped? Let me make sure I'm understanding the question. If at the time before he was a fugitive, did it make any difference to him? Yes. Suppose he had gone ahead and the sentence had taken place, would it make a difference that he stated a certain amount as distinguished from an unknown amount to the government in the charge? Would it make any differences to the sentence he would have received then? No, Your Honor. It didn't matter, and that's why the district court's decision here is well-reasoned in terms of finding no prejudice to him even if there had been error because the 445 grams, as Mr. Hatcher explained very clearly at the plea colloquy, would have put him at a level where he would get a 63-month guideline sentence. But was there guidelines then? There were guidelines then, and they were mandatory at the time. Okay. So he would have gotten how much for the amount of heroin? So if the government had only been able to prove the 445 that he admitted at sentencing, he would have received a 63-month sentence at that time. Was that the maximum sentence? That was just his mandatory guideline low-end range. So that's what he believes he would have received. Actually, he could have received that. And if all the government proved was of an unknown amount, what would he have received? And if it was an unknown amount at the plea colloquy, it still wouldn't have mattered because at sentencing, if 445 grams had been proved by a preponderance of the evidence, that would have put him in that same guideline range. Does that make sense, the way I'm explaining it? You're asking me, do the guidelines make sense? No, I'm asking, does my explanation make sense? Yeah, I understand what you're saying. Okay. So it just didn't make any difference. And that's why the district court's decision here is well-reasoned, which is to say if we look at how Mr. Hatcher was making this decision at the time, the only potential error that happened at his plea colloquy is that he was misadvised of the statutory maximums in the sense that they were told to be higher than they actually were. But that had no effect on his decision to plead because it didn't affect what he thought he was going to get, which is the 63 months. And I think that's the argument counsel makes, that there was no prejudice proven by the government. That is, they didn't bring in any witnesses that said that their memory had gone, they had no evidence that somebody was dead, a witness was dead or gone, there's no evidence that there's some missing wiretaps. But there was a presumption made, which his argument is you don't allow defendants to work that way. Why should you allow the government?  And the government's response is twofold, Your Honor. First, given the extraordinary length of the delay in this case and that it was caused by the defendant, so a 16-year delay caused by him becoming a fugitive, the government believes it's fair to assume prejudice in that situation. But even if it were not and if that were an error, it still didn't matter in this case. The prejudice isn't what swung the balance in terms of the district court deciding that there was no fair and just reason to withdraw. There was no fair and just reason to withdraw because there was no legal error that prejudiced Mr. Hatcher, as we just discussed. I also wanted to point out that the district court relies on the Nostratus case. And that case and another case cited by the district court in its first order, Navarro-Flores case, both make it clear that actually delay can be a factor in the fair and just inquiry, even if there's no prejudice. And in this case, although the government is not aware of any case involving a fugitive situation like this one, in this case where the 16-year delay is caused by the defendant being a fugitive, the government submits that's a factor that certainly the district court could give significant weight to in deciding there's no fair and just reason here. District court has a lot of discretion on this issue. What evidence do you have to support the rule adjustment? The two-level bump, Your Honor. Right. The evidence is summarized in the government's brief at, I think it's page 49. Basically, the PSR details this evidence that Hatcher directed Merrick to deliver 445 grams of heroin on December 21, 1992, and he had previously instructed Henderson to retrieve 140 grams of heroin from Blewett in November 1991. These are in the PSR. The PSR was based on the wiretaps. And I'd like to emphasize that this is a factual finding the court made that's only reviewed for clear error under the Morris Molina case. So it's a very deferential standard of review to this finding. I understood your position at the time was that they were somehow partners or co-equals. I think the government at some point used that language loosely, Your Honor, but I don't think that was ever taken as a legal position. And the district court acknowledged that and said that it was giving more weight to the wiretaps themselves than to any informal references that may have been made. And what did the wiretap exactly establish? I don't believe the wiretap evidence is actually in the record, Your Honor. I think it was just relied on in the PSR. And it's one guy telling another guy to go pick something up? One guy telling somebody to go pick something up, is that what it was? It was Henderson basically instructing the two other men that they should participate in these two deliveries. And the statement by the defendant that Henderson was my boy. Oh, yes. That was apparently in your brief. I mean, it was in your brief. What does that mean?  I don't think that the wiretaps were actually in the record. I think, again, the district court under the clear error standard had significant discretion here to look at the overall facts and determine that he was, in fact, a leader and supervisor. Also, as we pointed out ---- I want to make sure I'm clear. The transcripts of the wiretaps were not themselves presented to the judge? I don't believe they were, Your Honor. So what the judge is operating off of is a summary of them that the probation officer prepared? That was my understanding. And do I understand, am I remembering correctly, there was an objection to that? There were some of the wiretap excerpts were, I believe, included in the record in the original sentencing papers that were filed way back in 1993. I think there were some excerpts in there. So that may actually also have been a source of the district court's finding. Hypothetically, let me just say, suppose we were to agree with Mr. McCabe on this point, what would happen? This would go back for resentencing where he would ---- his guidelines would be recalculated at two levels less. Is that right? If the court were to find error on the supervisor enhancement, it would be remanded, but it wouldn't likely make any difference at all. That's what I was getting at. Yes. Because his guideline range was started at 262 before the drop to the statutory maximum. It would drop, under my calculations, to 210 to 262. Does that sound right? That sounds correct, Your Honor. So theoretically, I mean, he would go from 240 to 210 if he had a lucky day, I guess. Yes, Your Honor. Although I think the district court made fairly clear in the record that it believed the 240 maximum was the appropriate sentence here. Right. Of course, assuming what the guidelines provided at the time. Yes. He would get a lower guideline if we kicked out the two-level bump. Yes. Okay. Somewhat lower. I also, just going back to that point, I want to emphasize, and we have this in our brief as well at page 49, that Application Note 4 to Sentencing Guideline 3B1.1 makes it clear that in relatively small criminal enterprises, such as the one that Hatcher was supervising, which is his little cohort of three, this, in these situations, the distinction between organization and leadership and that of management or supervision is of less significance than in larger enterprises. So, again, the government's position is the district court did not clearly err on this because it's not, there's not much evidence required to meet this standard. Finally, Your Honor, on the issue of the consecutive versus concurrent sentences, the district court here had numerous reasons why it imposed these fully consecutively, and it did address all of the factors that are in the application note, although the defendant did not raise that issue below. Because of the severity of the conduct in the two cases, that they're totally unrelated, the government, the district court was well within its rights to impose a fully consecutive sentence. The counsel makes an argument that they aren't totally unrelated because when he was sentenced in Alabama, they took into account what happened here in the first one. That is, he got a boost in his sentence in Alabama because of what happened in the first. So they're not completely unrelated. There's a sentence increase, which makes them related. What's your answer to that? Your Honor, the guidelines provide these enhancements, for example, obstruction of justice, and so forth, in order to evaluate the conduct within each offense. And here, that's what the district court did. The fact that the conduct, the underlying conduct in the two cases is completely unrelated is what was important here, and that's what's pointed out in the Kim case that the government cited in its brief. So the fact that some of the enhancements may also apply just because he also had conduct in another case, that happens a lot in guideline cases. It doesn't result in the court having any obligation to impose sentences concurrently. It still has the discretion to determine whether that's appropriate. And here, the court didn't abuse its discretion in doing that. If there are no further questions, Your Honors, the government requests that the sentence and the conviction be affirmed. Thank you, Ms. Frick. Thank you. Mr. McCabe, I think you used up your time, but if you'd like to take a minute in rebuttal, you're welcome. I'll be very brief. Just as to a couple of the points as to what Judge Wallace pointed out as to the prejudice, I don't think it is fair to presume prejudice. If an appellant came in here, let's say he was indicted 10 years later on a murder case, if he were to say I'm prejudiced because people can't remember what happened 10 years ago, the many, many cases of this Court and the United States Supreme Court have said that's not enough. You've got to show a specific prejudice. And that just isn't shown here. And it probably can't be shown because it is a wiretap case. As to the point that Judge Silverman mentioned, as to the two points for being a leader, I would suggest that the Morris-Molina case that I've cited in my briefs, page 24 of the appeal, is there's more evidence of leadership there than there is in this case. And yet this Court said that there was not sufficient evidence to enhance it by two levels. There was, I don't believe any – well, certainly in the proceedings here, there was no part of the record included segments from the record, from the wiretap. And I don't think the record contained anything from the wiretap. It was a different judge, as the Court's aware, and I don't think there was any evidence as to the exact wording or what was said in the wiretap. I would suggest that for all of the reasons that I raised, if the Court is not prepared to allow him to withdraw his plea, that it should be remanded for a new sentencing hearing with regard to all of the elements. Thank you. How much – I would like to go back to the issue of supervision. How much evidence has to be shown for the government to be able to get the – for the defendants to suffer the supervision increase? Does he have to just manage one person or two or three? I honestly can't remember. I can't remember whether it's – here, at most, there were two. Yes. It seems to me there's some evidence at least that Henderson was being supervised and was identified as my boy that he referred to several times during his wiretap conversations. But I didn't know whether it had to be one or two or whatever to get it. I don't think it – I use those all the time. I don't think it has to – it certainly doesn't have to be more than two because there were only two here. I think one is sufficient. But I really don't think, in the context of everything, that the phrase my boy necessarily means a supervisorial underlying relationship. I don't think that much reliance should be placed upon those – that phrase. Okay. Thank you. Thank you, Mr. McKay. Ms. Frick, thank you too. The case is disargued. It's submitted. We'll stand in recess. Thank you.
judges: Wallace, Noonan, Silverman, Cjj